UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-CR-20253-ARTAU

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RAIMUNDO ANTONIO ROCA-NARANJO,

    Defendant.

_____/

**DEFENDANT ROCA'S MOTION TO SUPPRESS
EVIDENCE AND REQUEST FOR A *FRANKS v. DELAWARE* HEARING**

    Defendant, RAIMUNDO ANTONIO ROCA-NARANJO, by and through undersigned counsel, pursuant to the Fourth Amendment to the United States Constitution, Federal Rule of Criminal Procedure 12(b)(3)(C), and the applicable law, respectfully moves this Honorable Court to suppress all physical evidence seized as a result of the execution of a search warrant at 16161 NW 83rd Place, Miami Lakes, Florida, and any statements or derivative evidence obtained therefrom. In support thereof, the Defendant states as follows:

**I.    INTRODUCTION**

    This motion seeks to suppress evidence obtained pursuant to a search warrant issued by United States Magistrate Judge Enjolique A. Lett, which was based upon an affidavit containing material misrepresentations and omissions of fact. The Defendant submits that the affiant knowingly, intentionally, or with reckless disregard for the truth, deliberately misrepresented that the intercepted phone calls between co-defendant Bienvenido Rodriguez (hereinafter "Bienvenido") and Defendant Roca ("ROCA"), related to the distribution of a drug shipment. The affiant intentionally or with reckless disregard for the truth, blatantly misrepresented the content

of the May 25 intercepted phone call between Bienvenido and Defendant Roca by intentionally mistranslating words from Spanish to English, omitting context and changing grammar and syntax, all in an effort to align with his interpretation of the language of drug traffickers.

The affidavit on its face contains insufficient information to establish probable cause that drugs, drug paraphernalia or controlled substances would be found at the premises, thus any reliance by the affiant on the Magistrate Judge's probable cause determination was not objectively reasonable or founded in good faith. The search warrant application in this case relied upon stale, uncorroborated, and speculative information and was conceived, drafted and executed in bad faith and in violation of Mr. Roca's rights under the Fourth and Fourteenth Amendments to the United States Constitution. The Defendant requests an evidentiary hearing and in support thereof sets out evidence and material misrepresentations, falsehoods and omissions of fact which were knowingly made by the affiant and with reckless disregard for the truth.

Lastly, in light of the issuing Magistrate Judge's subsequent recusal from this case, this Court should conduct a *de novo review* of the probable cause determination. See Recusal Order attached hereto as Exhibit "A."

## II.    FACTUAL BACKGROUND

1.    The search warrant was executed at approximately 9:00 p.m. on June 11, 2025. The investigation which preceded the application for the search warrant was conducted by members of HIDTA, a multi-jurisdictional task force, including FBI Special Agent Ethan Paazko. While the search did not reveal the presence of any drugs, drug related paraphernalia or ledgers of any kind, officers and agents nevertheless seized Mr. and Mrs. Roca's Rolex watches, several cellular phones, two ipads, approximately $62,520.00 in U.S. Currency and two firearms, which were located in Ada Roca's closet.

2. The search was executed pursuant to a warrant issued by United States Magistrate Judge Enjolique A. Lett on June 10, 2025. The search warrant was authorized based upon an affidavit submitted by FBI Special Agent Ethan Paszko. The search warrant affidavit is attached hereto and identified as Exhibit B. The search warrant which was issued as a result of the affidavit is attached hereto and identified as Exhibit B-1.

3. While Agent Paszko's affidavit set forth that a wire intercept order had been entered in this case, the affidavit nevertheless contains false and/or misleading information that intercepted phone calls between Bienvenido and ROCA related to the distribution of a drug shipment.

4. The affidavit contains no information from any source (other than Agent Paszko's conjecture and speculation) to suggest that ROCA was involved in criminal activity, was a member of a drug trafficking organization, or was a co-conspirator with any of the named defendants charged in this case.

5. More importantly, the affidavit is devoid of any information that criminal activity ever occurred or was observed occurring at ROCA's residence (i.e., Title III intercepted phone calls, calls from Crime Stoppers, tips from informants, complaints from neighbors, controlled purchases of narcotics, or law enforcement surveillance), located at 16161 NW 83rd Place, Miami Lakes, Florida.

6. The affidavit misstated and/or misrepresented that from January 15, 2025[1] law enforcement had received judicial authorization to intercept Bienvenido's cellular phone calls, when the judicial authorization to intercept Bienvenido's cellular devices did not occur until May 2025.

---

[1] On January 15, 2025, law enforcement obtained a judicial authorization to intercept cellular devices associated with Oscar Del Pozo, not Bienvenido.

3

7. Irrespective of the affiant's misrepresentations in this regard, the affidavit referenced several phone calls with multiple targets, including a recorded conversation on May 20 at 8:31 p.m., where the caller told Bienvenido that he "caged the roosters already."

8. While Agent Paszko's affidavit makes reference to the "caged roosters" conversation as some kind of code for drug traffickers, Agent Paszko conveniently failed to mention in his affidavit that in the recorded conversation, immediately preceding the phrase "caged the roosters already" the caller had advised Bienvenido that "the roosters had escaped." Agent Paszko intentionally or with reckless disregard for the truth omitted salient portions of the conversation in order to distort the context of the conversation in which the parties were actually discussing roosters, and not using any code language.

9. Agent Paszko's affidavit also failed to mention that law enforcement agents who monitored, documented and provided a synopsis of the intercepted calls, noted that in numerous intercepted conversations, the parties were actually talking about roosters and chickens. See Govt's synopsis attached hereto as Exhibit "C.

10. Notwithstanding Agent Paszko's knowledge that Bienvenido and the individuals with whom he spoke regularly discussed the breeding of roosters, Agent Paszko with reckless disregard for the truth, asserted in his affidavit that based on his vast training and experience, the conversations regarding roosters was some type of coded language utilized by drug traffickers.

11. Irrespective of Agent Paszko's speculation and conjecture regarding ROCA, the affidavit on its face did not contain sufficient information to establish probable cause that ROCA was involved in any drug conspiracy or that drugs, drug paraphernalia, or contraband of any kind would be located at ROCA's residence.

12. At best, the affidavit set forth that ROCA was observed meeting with Bienvenido on May 21, 2025, during which meeting Bienvenido gave ROCA a dark colored satchel. Thereafter

4

law enforcement observed ROCA leave Bienvenido's residence with the satchel and drive directly to his residence.[2] Agents observed ROCA park and exit his vehicle, and walk toward his residence, and while they observed ROCA holding an object, admittedly, the agents could not confirm that the object he carried was the same satchel[3] he had received from Bienvenido.

13. Law enforcement admittedly never observed ROCA take the dark colored satchel into the residence.

14. On May 25, 2025, law enforcement intercepted a [14 second] phone call between Bienvenido and ROCA.

15. According to Agent Paszko's affidavit, during this call Bienvenido advised ROCA that he was informed by "his buddy" that "family is coming, crossed" and referenced "black, yellow, and green," while noting that "the family is different." ROCA told Bienvenido not to worry. Based on his training and experience, Agent Paszko alleged in his affidavit that the use of the term "crossed" is commonly understood in drug trafficking investigations to refer to narcotics or couriers having successfully crossed the U.S. border/entered the United States of America. The reference to "family" he believed to be coded language for drug shipments or transporters, while the mention of colors – black, yellow, and green – he claims is consistent with methods used to differentiate between types, sources, or grades of narcotics, or to track quantities of a multi-package shipment.

---

[2] While agents had previously utilized a marked Miami Police Department K9 unit to conduct a pretextual traffic stop on co-defendant Oscar Del Pozo in order to determine the contents of a black roller suitcase that he exited with from Bienvenido's house, inexplicably, the agents made no attempts in this case to conduct a similar pretextual traffic stop of Mr. Roca to determine the contents of the dark colored satchel.

[3] Other than the affiant's conjecture and speculation as to the contents of the dark colored satchel, there is no evidence whatsoever to establish that the satchel contained narcotics or narcotics proceeds.

5

16.     In this case, Agent Paszko intentionally or with reckless disregard for the truth changed the grammar and syntax of the translation by converting the word "crossed" from an adjective to a verb (note, this pales in comparison to how the affiant misrepresented the translation in the Bienvenido complaint, where he paraphrased it as "they had crossed" and changed the colors to "red and black," when the color red was never discussed).

17.     With respect to this phone call, the affiant clearly speculated in the affidavit submitted in support of the search warrant, that this 14 second call utilized coded language, which he interpreted to relate to cross border drug shipments, when the call simply related to roosters.

18.     As the evidence will demonstrate, in another intercepted phone call that occurred ten minutes after the ROCA May 25 call, Bienvenido is recorded telling someone to move the food bucket … so that the roosters can reach it.

19.     The affiant intentionally or with reckless disregard for the truth, misrepresented the content of the May 25 intercepted phone call between Bienvenido and ROCA by twisting innocent words in the translation to align with his interpretation of code language used by drug traffickers, omitting context and words, changing grammar and syntax, and mistranslating words from Spanish to English.

20.     Despite Agent Paszko's attempt to mislead the magistrate judge with respect to the May 25 intercepted call, to be clear, that conversation, as evidenced by the numerous intercepted and minimized calls in this case, was about roosters. The reference to the "family" is the lineage; "comes crossed" means that they are cross bred; and reference to the different colors, "black, yellow, and green" denotes the common breeds of roosters, which are identified by their foot colors.  See representative photographs of roosters with black, yellow and green legs attached hereto as Exhibit "D."

6

21. While there were no further calls or communications between ROCA or anyone in the alleged drug trafficking organization after the recorded May 25 call, the affiant nevertheless concludes, without specific evidence, that ROCA "is still engaging in drug trafficking."

22. The affiant intentionally failed to disclose that law enforcement continued surveilling the ROCA residence after the May 25 call, and that no drug related activity was ever observed.

23. The affidavit provided no factual nexus between the residence and any ongoing or recent criminal activity. At most, it contained conclusory assertions unsupported by facts speculating that controlled substances and/or contraband would likely be located within the home at the time of the search.

24. The most recent information law enforcement possessed regarding the premises, related to the May 21 surveillance, where law enforcement followed ROCA to his residence, but admittedly acknowledged that they never observed ROCA enter the home with the so called, dark colored satchel.

25. The latest information contained in Agent Paszko's affidavit was approximately three weeks old, rendering it stale under prevailing Fourth Amendment jurisprudence.

**III.   ARGUMENT AND APPLICABLE LAW**

The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amend. IV. The point of the Fourth Amendment's particularity requirement is to protect individuals from being subjected to general, exploratory searches. *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S. Ct. 2022, 2038, 29 L. Ed. 2D 564 (1971). Evidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution. *Franks v. Delaware*, 438 U.S. 154, 171, 57 L. Ed. 2d 667, 98 S.

7

Ct. 2674 (1978). In order to establish probable cause for the issuance of a search warrant, the affidavit supporting the search warrant must "state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin,* 297 F. 3d 1308, 1314 (11th Cir. 2002).

### A. The Search Warrant Was Invalid Due to Material Misrepresentations and Omissions.

The Fourth Amendment mandates that warrants be issued only upon a showing of probable cause supported by oath or affirmation. In *Franks*, the Supreme Court held that a warrant must be voided and the fruits of the search suppressed if a defendant establishes that (1) the affidavit contained intentionally or recklessly false statements or material omissions, and (2) the affidavit's remaining content, once corrected, is insufficient to establish probable cause.

Suppression is the appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Franks*, 438 U.S. at 154, 155-56; *United States v. Leon,* 468 U.S. 897 (1984). If these conditions are met, "the search warrant must be voided and the fruits of the search excluded." *Id.* at 156. The *Franks* rule applies equally to deliberate omissions of material facts. *United States v. Kapordelis*, 569 F.3d 1291, 1309 (11th Cir. 2009); *Madiwale v. Savaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997).

Here, the affiant either deliberately or with reckless disregard for the truth, misrepresented that the three recorded conversations between Bienvenido and ROCA, cumulatively lasting less than 30 seconds, related to the distribution of a drug shipment. With respect to the May 25 phone call, Agent Paszko intentionally mischaracterized the content of the conversation by mistranslating the words spoken, changing grammar and syntax and consequently claiming that the conversation was all drug code. Although the affiant recognized that law enforcement never saw ROCA take

8

the dark colored satchel (whose contents were unknown) into his residence, the affiant nevertheless intentionally or with reckless disregard for the truth misrepresented that ROCA was still engaged in drug trafficking. The affiant failed to disclose the fact that law enforcement had no evidence that controlled substances had ever been observed in the ROCA residence or would be found there. Once these misrepresentations are corrected, the affidavit fails to support a finding of probable cause.

### B. The Information Provided To Magistrate Judge Lacked Probable Cause For Issuance of Search Warrant.

To justify a warrant, the government must demonstrate a fair probability that contraband or evidence of a crime will be found at the place to be searched. *Illinois v. Gates*, 462 U.S. 213 (1983). Conclusory assertions or generalized suspicions are insufficient. Probable cause to issue a search warrant is found by looking at the "totality of the circumstances" contained within the four corners of the affidavit. *Gates,* 462 U.S. at 237. A basis of knowledge, veracity and reliability are all factors which are relevant to the probable cause determination. However, a deficiency in one factor can be compensated for by a strong showing in another factor. *Id*. at 230.

Magistrates making probable cause determinations must be careful not to simply ratify factual allegations without some showing of reliability on the part of the source. *Jaben v. United States*, 381 U.S. 214, 224-225 (1965) (quoted with approval in *Gates*, 462 U.S. 213, 230, n.6). A failure to ensure that affidavits contain more than "bare bones" conclusions is an abdication of the duty of the issuing judge. *Gates*, 462 U.S. at 239.

"Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," and great deference is accorded to a magistrate's determination. *Leon*, 468 U.S at 914. That deference, however, "is not boundless." *Id.* "[R]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial

basis for determining the existence of probable cause.'" *Id.* at 915. "Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, or because the form of the warrant was improper in some respect." *Id.*

In determining whether probable cause exists to justify a search, the trial court must make a judgment based on the totality of the circumstances as to whether the information contained in the affidavit for the warrant demonstrates reasonable probability that contraband can be found in a particular place at a particular time. *Gates,* 462 U.S. at 214. The affidavit submitted in support of the search warrant in this case begs for information regarding whether drugs, drug paraphernalia or contraband had ever been observed at the ROCA residence, and there certainly was no information provided that drugs or contraband would be found on the premises at a particular time, namely, on June 10, 2025. See *Giordenello v. United States,* 357 U.S. 480, 486 (1958)(magistrate could not make independent assessment of probable cause because complaint contained no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein, did not indicate any sources of the affiant's belief, and did not set forth any other sufficient basis upon which a finding of probable cause could be made); *Nathanson v. United States,* 290 U.S. 41, 47 (1933)(magistrate could not make an independent assessment of probable cause because officer merely stated that his suspicion of criminal activity was supported by probable cause without disclosing supporting facts).

The duty of this Court in reviewing the affidavit is to ensure that the issuing magistrate had a "substantial basis for concluding that probable cause existed." *Id*. at 214. The affidavit here contained no concrete link between the alleged criminal conduct and the premises to be searched. A reading of the affidavit shows merely conclusory statements and does not support probable cause

10

for the search. The magistrate did not and could not have made a proper finding of probable cause to justify the search based upon the affidavit presented in this case. As such, the warrant was constitutionally defective.

### C. The *Leon* Good-Faith Exception and Its Limits

In *Leon*, 468 U.S. at 920, the Court held that evidence seized pursuant to an invalid search warrant would nevertheless be admissible "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." However, the "good-faith exception" does not apply if its application would allow the purpose of the exclusionary rule to be circumvented (i.e., deterrence of police misconduct.) Hence, *Leon* says:

> Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth. *Id*. at 923.

There are four distinct circumstances in which the good faith exception does *not* apply. They occur when:

a) Reliance on the warrant was not objectively reasonable.

b) The magistrate wholly abandoned her judicial role when issuing the warrant.

c) The police were "so lacking of probable cause" that official belief in the existence of probable cause was entirely unreasonable. (See, *Brown v. Illinois*, 422 U.S. 590, 611 (1975), (quoted with approval in *Gates*.))

d) The warrant itself is so facially deficient that the executing officers cannot presume it to be valid.

Here, Mr. Roca submits that all four exceptions to the good faith exception apply. The fact that the magistrate in this case wholly abandoned her judicial role is apparent on the face of the affidavit itself. The facts which support Mr. Roca's argument that the affiant acted in bad faith are the same facts which ROCA submits in support of his argument that violations under *Franks v.*

11

*Delaware* have also occurred. However, if this Court determines that the affidavit, on its face, is void of probable cause, there is no need to conduct a *Franks* analysis.

The evidence of bad faith currently known to Mr. Roca is outlined in the introduction and factual background sections of this motion. Mr. Roca submits that these misrepresentations and falsehoods are evidence at best, of the affiant's reckless disregard for the truth and his obligations under the law. The affiant cannot claim that his reliance on the magistrate judge's signature was objectively reasonable when his presentation of the facts within the affidavit was not. See also, *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002).

### D. The Information Was Stale and Did Not Support Probable Cause

Probable cause must exist at the time the warrant issues. Information that is too old cannot support probable cause unless it establishes ongoing or continuous criminal conduct. *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994); *United States v. Bascaro*, 742 F.2d 1335, 1345–46 (11th Cir. 1984).

The government's information was at least three weeks old, with no evidence of continuing activity. The absence of recent or corroborated evidence rendered the affidavit's assertions stale and incapable of supporting a finding that contraband would be present at the time of the search.

### E. De Novo Review Is Warranted Given the Issuing Magistrate's Recusal

The subsequent recusal of the issuing magistrate judge raises concerns about neutrality and impartiality. The Fourth Amendment requires that warrants be issued by a "neutral and detached magistrate." *Johnson v. United States*, 333 U.S. 10, 14 (1948). Courts have emphasized that judicial neutrality is a "constitutional predicate" to the issuance of any warrant. See *Leon*, 468 U.S. at 914. A magistrate who has since recused herself from the case cannot be presumed to have acted with the requisite neutrality and detachment required by the Fourth Amendment. The recusal provides additional grounds for suppression, as it undermines confidence in the integrity of the

probable cause determination. At a minimum, a *de novo review* is appropriate to ensure the integrity and impartiality of the judicial process and to determine independently whether the warrant was supported by probable cause.

## IV. CONCLUSION

For the foregoing reasons, the search warrant issued for the Roca residence at 16161 NW 83rd Place, Miami Lakes, Florida was invalid, and all evidence obtained as a result of its execution—together with any derivative evidence or statements—must be suppressed as fruits of an unconstitutional search and seizure.

WHEREFORE, Defendant Roca respectfully requests that this Honorable Court:

1. Conduct a *Franks* hearing to examine the affiant's misrepresentations and omissions;

2. Upon such hearing, find the search warrant invalid and suppress all evidence obtained from the search of Defendant Roca's residence located at 16161 NW 83rd Place, Miami Lakes, Florida; and

3. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: */s/ Arturo V. Hernandez, Esq.*
ARTURO V. HERNANDEZ, P.A.
Florida Bar No.: 324078
Gables International Plaza
2655 S LeJeune Road, Suite 524
Coral Gables, Florida 33134
Tel: (305) 579-4850
E-Mail: avhlawpa@gmail.com

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF and served on all counsel of record on this 16th day of January, 2026.

                              */s/ Arturo V. Hernandez, Esq.*
                              ARTURO V. HERNANDEZ, P.A.